UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                        Plaintiff,

            -against-

DR. MARJORIE KING, et al.,

                        Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-02331 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jane Doe ("Plaintiff") brings this action alleging claims under 42 U.S.C. § 1983 and state law against a number of employees from the New York State Department of Health ("DOH") and/or Helen Hayes Hospital ("HHH"), a facility owned by the DOH, in connection with, *inter alia*, her discharge from HHH and transfer to an acute-care hospital.

Plaintiff filed her initial Complaint on March 16, 2020 (Doc. 1), an Amended Complaint on June 10, 2020 (Doc. 19), and a Second Amended Complaint on August 20, 2020 (Doc. 39, "SAC"). The Second Amended Complaint presses the following claims against Defendants: (1) "Deprivation of Liberty Interest in Discharge Planning"; (2) "Deprivation of Liberty Interest in Medical Information Necessary for Making an Informed Decision"; (3) "Deprivation of Property Interest in a Discharge Memorialization"; (4) "Deprivation of Liberty Interest in Medical Care"; (5) "Deprivation of Property Interest in an Intensive Rehabilitative Therapy Level of Care"; (6) "Deprivation of Liberty Interest Caused by Unreasonable Search of Private Records"; (7) false imprisonment; (8) malicious prosecution; (9) abuse of process; (10) aiding and abetting; (11) conspiracy; and (12) "Indivisible Harm by Separate Tortfeasors." (*See generally* SAC). Plaintiff, in her Second Amended Complaint, sues the following individuals: Dr. Marjorie King ("King"), Kathleen Martucci ("Martucci"), Glenn M. Seliger ("Seliger"), Jacqueline Velez ("Velez"), Linda

Egenes ("Egenes"), John Mathew ("Mathew"), Christine Kehoe ("Kehoe"), Rosemary Galvin ("Galvin" and collectively, "Defendants"), and the Estate of Kwang ("Ed") Ng (the "Estate").[1]

Defendants moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on September 17, 2020. (Doc. 40; Doc. 42, "Def. Br."). Plaintiff served opposition to the motion on October 1, 2020 (Doc. 46, "Opp. Br."), and the motion was briefed fully with the service and filing of Defendants' reply brief on October 15, 2020 (Doc. 45, "Reply Br."). On October 16, 2020, Plaintiff requested leave to file sur-reply (Doc. 47), which the Court denied on the grounds that the arguments Plaintiff wished to make were raised and addressed in the extant motion practice (Doc. 49). Plaintiff subsequently sought the disqualification of Defendant Seliger's counsel, which the Court denied on the record at a conference held on March 16, 2021. (Mar. 16, 2021 Min. Entry). On May 12, 2021, Plaintiff moved for reconsideration of the Court's Order (Doc. 60; Doc. 62).

For the reasons set forth below, Defendants' motion to dismiss is DENIED and Plaintiff's motion for reconsideration is DENIED.

## BACKGROUND

Plaintiff was hospitalized at Jamaica Hospital Medical Center from September 30, 2019 until October 3, 2019, whereupon she was transferred to Weill Cornell Medical Center ("WCMC"). (SAC ¶¶ 45, 53). At both facilities, Plaintiff was treated with anti-epileptic drugs for her epilepticus status. (*Id*. ¶¶ 52-57). One of the anti-epileptic drugs administered at WCMC was phenobarbital, which had toxic and/or adverse effects on Plaintiff. (*Id*. ¶¶ 56-59, 95). In addition to a persistent coma, Plaintiff had almost complete immobility below her neck, attributed to critical illness myopathy. (*Id*. ¶¶ 58-61, 132). On November 25, 2019, Plaintiff's agents and WCMC's

---

[1] The Estate did not appear in this action and did not join Defendants' motion to dismiss.

medical staff attended a discharge planning meeting concerning Plaintiff's request for a discharge and transfer to participate in acute rehabilitation for her brain injury. (*Id*. ¶ 67). On December 6, 2019, Plaintiff was discharged from WCMC and transferred to HHH as an inpatient for traumatic brain injury rehabilitation. (*Id*. ¶¶ 14, 62, 68).

On January 27, 2020, Defendant Mathew, Plaintiff's case manager, advised Plaintiff that HHH had decided to discharge her to sub-acute rehabilitation. (*Id*. ¶¶ 72, 74). On January 29, 2020, Plaintiff requested an expedited determination of HHH's discharge decision from Livanta, the Quality Improvement Organization ("QIO") responsible for processing a discharge appeal. (*Id*. ¶¶ 78-81). On February 6, 2020, Mathew provided Plaintiff with a Notice of Discharge ("NOD"), which Plaintiff contends did not contain specific information about her current medical condition or any medical rationale to discharge her to sub-acute rehabilitation instead of acute rehabilitation. (*Id*. ¶¶ 82-86). Plaintiff complained to Defendants Seliger, Velez, Egenes, and Mathew that she required acute rehabilitation to recover from the effects of the phenobarbital. (*Id*. ¶ 95). Despite advising Defendant Seliger, the Director of Traumatic Brain Injury Rehabilitation Services at HHH, of WCMC's administering phenobarbital to Plaintiff and the adverse reaction Plaintiff had, he did not incorporate that into Plaintiff's medical history in HHH's medical records for Plaintiff. (*Id*. ¶¶ 98-100). Her medical records at HHH did not include the WCMC medical records or any mention of phenobarbital or myopathy. (*Id*. ¶¶ 132-134).

Plaintiff's appeal to Livanta QIO was denied on February 14, 2020. (*Id*. ¶ 102). Because the QIO relied exclusively on HHH's medical records in finding that "[t]he patient has had Adequate time in Acute Rehabilitation with little progress and the Transfer to Skilled Nursing Facility is now Appropriate," Plaintiff requested an expedited reconsideration. (*Id*. ¶ 103). Again relying exclusively on HHH's records, on February 20, 2020, Livanta issued an expedited

reconsideration denying Plaintiff's second level appeal and stating in relevant part, that "[t]ransfer to facility of lower acuity is appropriate at this time for further intensive therapy." (*Id*. ¶¶ 120-122). Plaintiff provided Defendant Seliger with a copy of the WCMC records on February 20, 2020, and on February 21, 2020, HHH suspended Plaintiff's intensive rehabilitative therapy. (*Id*. ¶¶ 131-136). On February 24, 2020, Plaintiff objected to the improper and premature suspension of intensive rehabilitative therapy, in light of the statement in the reconsideration decision concerning "intensive" therapy. (*Id*. ¶¶ 138-139). Defendant Mathew, in response, advised that HHH would reinstate any necessary services to Plaintiff upon proof of a Medicare third level appeal. (*Id*. ¶ 141). On February 26, 2020, Plaintiff advised that she intended to file a third level appeal and requested that HHH reinstate all necessary therapy services, however, HHH did not do so. (*Id*. ¶¶ 144-145). On February 28 and 29, 2020, believing that the withholding of "necessary therapy services" which had been characterized by Defendant Seliger as a "comprehensive sub-acute program" constituted a crime, Plaintiff notified Seliger and the New York State Police that HHH was endangering the welfare of an incompetent or physically disabled person. (*Id*. ¶¶ 152-159).

On March 6, 2020 HHH filed in Rockland County Supreme Court a petition for the appointment of a guardian for Plaintiff as an allegedly incapacitated person, which was signed by Defendant Martucci. (*Id*. ¶¶ 164, 179). The petition incorporated diagnostic, treatment, and financial information from Plaintiff's medical records; however, Plaintiff had not granted permission to HHH to access and use that information. (*Id*. ¶¶ 168-169). On March 11, 2020, HHH filed an Order to Show Cause in connection with the guardianship petition which was made returnable on April 23, 2020; Plaintiff filed a third level Medicare appeal; and Plaintiff advised Defendant Seliger of leg pain she was developing which she attributed to the failure to provide her

with medically necessary services at HHH. (*Id*. ¶¶ 179-184). Prior to the return date of the Order to Show Cause, HHH withdrew its guardianship petition. (*Id*. ¶ 205).

On June 10, 2020, Plaintiff developed sepsis and required emergency treatment, so she was discharged from HHH and transferred to Maimonides Medical Center. (*Id*. ¶¶ 218-220). Plaintiff did not receive any documentation related to her discharge from HHH. (*Id*. ¶ 221). On July 1, 2020, Plaintiff's third level Medicare appeal was denied. (*Id*. ¶¶ 222-224).

The thrust of Plaintiff's claims is that Defendants violated her constitutional rights by failing to properly discharge Plaintiff with a written discharge plan, failing to provide Plaintiff with a sufficient NOD concerning myopathy and/or phenobarbital intake, improperly reducing Plaintiff's level of care, failing to arrange for Plaintiff's receipt of further intensive therapy upon discharge, and by searching Plaintiff's medical records for the purpose of commencing a guardianship proceeding. Plaintiff also alleges claims of false imprisonment, malicious prosecution, abuse of process, aiding and abetting, and conspiracy. Plaintiff seeks injunctive relief against King, HHH's Chief Medical Officer, to ensure that HHH maintains an accurate and complete record of her medical history, and seeks compensatory and punitive damages against Defendants.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory of constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When

deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences

are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I.    Motion to Dismiss

The Court must first address whether Plaintiff has standing to bring the claims alleged in her Second Amended Complaint before determining whether they are stated plausibly. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016). The Supreme Court has held that parties pressing claims in federal courts must have standing to bring their claims to ensure that there is an actual case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Id*. 560-61 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). For the purposes of standing, an injury must be an injury in fact, meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. at 560 (citations omitted). A plaintiff's pleading must only allege, to survive a motion to dismiss, facts that "affirmatively and plausibly suggest" her standing to sue. *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (citing *Boelter v. Hearst Commc'n, Inc.*, 192 F. Supp. 3d 427, 437 (S.D.N.Y. 2016)).

Defendants argue that Plaintiff's allegations that they either failed to provide Plaintiff with a discharge plan or that the NOD that was issued was materially incomplete fails to establish how this caused her injury. (Def. Br. at 9-10). Defendants point to Plaintiff's allegations admitting that she was not transferred pursuant to the challenged discharge plan, but only after she developed sepsis, and that Plaintiff availed herself of three levels of Medicare appeals challenging HHH's determination that she was ready to be discharged to a skilled nursing care facility. (*Id.*).

Plaintiff, relying on *Blum v. Yaretsky*, contends that she has standing to challenge Defendants' conduct. 457 U.S. 991, 1000 (1982) (concluding "that the threat of facility-initiated discharges or transfers to lower levels of care is sufficiently substantial that respondents have standing to challenge their procedural adequacy"). The *Blum* case is not squarely on point for Plaintiff who herein challenges the omission of certain medical information from HHH's medical records, and Defendant medical professionals' determinations with regard to discharge planning and the proper level of care provided. The harm, Plaintiff argues, that she has alleged "arises from [ ] Defendants' suspension of Plaintiff's intensive therapy on February 21, 2020[,] . . . that the withholding of intensive therapy was causing Plaintiff to suffer 'increased stiffness . . . [and] diminished her mental sense of wellbeing' . . . [, and that] Plaintiff's Agents notified Defendant Dr. Seliger that Plaintiff suffered a new onset of leg pain 'likely due to the inactivity arising from the lack of medically necessary therapies.'" (Opp. Br. at 3 (citing SAC ¶¶ 184, 277)).

Defendants argue that because Plaintiff's claims boil down to a challenge to her therapy determination, not its procedural adequacy, she does not have standing. (Reply Br. at 2-4). Defendants, however, conflate standing with the merits of the underlying claim. *See Ctr. for Transitional Living, LLC v. Advanced Behav. Health, Inc.*, No. 20-CV-01362, 2021 WL 3409512, at *4 (D. Conn. Aug. 4, 2021). The Second Amended Complaint and the favorable inferences

drawn therefrom are sufficient to plausibly establish that Plaintiff suffered an injury, that there exists a nexus between Plaintiff's claimed injuries and Defendants' actions or omissions, and that such injury could be redressed by the requested relief. Accordingly, that branch of Defendants' motion to dismiss under Rule 12(b)(1) is denied.

As regards the branch of Defendants' motion under Rule 12(b)(6), the Court is unable to conclude based upon Defendants' presentation at this juncture that they have satisfied their burden of proof on this motion. Although Plaintiff's pleading is not a model of clarity, Defendants' motion papers do little to elucidate the bounds of the issues presented. The arguments raised by Defendants are inadequate, much less sufficiently persuasive, to justify dismissal of the Second Amended Complaint. Simply put, the Court cannot determine on these papers that Defendant has established as a matter of law that Plaintiff has not stated a plausible claim for relief.

Likewise, the Court cannot conclude that qualified immunity bars the claims alleged against Defendants. While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *Daugevelo v. Fridlich*, No. 20-CV-00538, 2020 WL 7630358, at *5 (S.D.N.Y. Dec. 22, 2020)

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty*

*Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also al-Kidd*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . .[I]t protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)). However, on a motion to dismiss, Defendants' entitlement to qualified immunity must "appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (internal quotation marks omitted). That is not the case here.

Defendants argue that "it was objectively reasonable for [ ] Defendants to believe that Plaintiff's constitutional rights were not violated by any of their actions . . . . Defendants acted in an objectively reasonable manner and did not act in violation of any clearly established and particularized federal right." (Def. Br. at 24-25). This conclusory argument merely parrots the qualified immunity standard without meaningfully applying applicable case law to the facts of this case. The Court cannot conclude from the four-corners of the Second Amended Complaint and on the motion papers before it that Defendants are entitled to qualified immunity at this early pleading stage. *See Dipinto v. Westchester Cty.*, No. 18-CV-00793, 2019 WL 4142493, at *4 n.4 (S.D.N.Y. Aug. 30, 2019) ("[T]o the extent Defendants also make a qualified immunity 'argument,' Defendants merely restate the qualified immunity caselaw without meaningfully applying it to the facts of the case. The Court therefore declines to consider at this time whether individual Defendants are protected by qualified immunity.")

Accordingly, the branch of Defendants' motion to dismiss under Rule 12(b)(6) is denied.

II.     The Defendant Estate

On July 30, 2020, a Suggestion of Death was filed notifying the Court of the death of Kwang ("Ed") Ng during the pendency of this action. (Doc. 28). Plaintiff was aware of his death at the time of the filing of the Second Amended Complaint, as noted in her letter dated August 7, 2020 (Doc. 32), and acknowledged in the revised caption of the Second Amended Complaint which was changed to substitute Estate of Kwang ("Ed") Ng for Kwang ("Ed") Ng (*See* SAC).

There is no indication on the docket that the Estate (if there is any estate), or a representative of the Estate, was ever served. Federal Rule of Civil Procedure 4(m) requires service upon a defendant within ninety days after the filing of the pleading, which in this case would have required service by November 18, 2020. On September 2, 2021, the Court issued an Order warning Plaintiff that this action would be dismissed without prejudice as to the Estate unless, by September 8, 2021, Plaintiff filed proof of service indicating that the Estate was served on or before November 18, 2020, or showed good cause for her failure to comply with Federal Rule of Civil Procedure 4(m). (Doc. 64). Plaintiff did not file anything in response to the Court's September 2, 2021 Order. Accordingly, the action is dismissed as against the Estate for failure to comply with Rule 4(m).

III.    Motion for Reconsideration

On February 18, 2021, Plaintiff filed a letter-motion seeking the disqualification of the New York Attorney General's Office as counsel for Defendant Seliger. (Doc. 50). On February 25, 2021, Defendants filed a letter responding to the arguments and factual averments raised in Plaintiff's letter-motion. (Doc. 51). The Court scheduled a conference which proceeded on March 16, 2021. (Doc. 52). At that conference, the Court heard argument from the parties and, upon consideration of the letter-motions and oral argument, for the reasons stated on the record and the case law cited therein, denied Plaintiff's request to disqualify Defendant Seliger's counsel. (Mar.

16, 2021 Min. Entry; *see also* Doc. 56-1). The Court's decision was memorialized on March 16,

2021 in a text entry on the docket. (Mar. 16, 2021 Min. Entry). On April 5, 2021, Plaintiff filed a

letter-motion seeking a conference in connection with an anticipated motion for reconsideration

(Doc. 53), which Defendants opposed on April 12, 2021 (Doc. 56). Because a pre-motion

conference prior to making a motion for reconsideration is not required by the Court's Individual

Practices and was otherwise unnecessary, the Court issued an Order permitting Plaintiff leave to

supplement her letter-motion with briefing in a separate filing. (Doc. 57). On May 12, 2021,

Plaintiff filed a motion for reconsideration, attaching a "draft memorandum in support of

Plaintiff's motion to disqualify counsel." (Doc. 60). Defendants opposed Plaintiff's motion (Doc.

62), and the motion was fully briefed with Plaintiff's reply filed on May 28, 2021 (Doc. 63).

Under Local Civil Rule 6.3, "a notice of motion for reconsideration or reargument of a

court order determining a motion shall be served within fourteen (14) days after the entry of the

Court's determination of the original motion." Plaintiff never filed a notice of motion for

reconsideration. Even if the Court were to construe Plaintiff's letter-motion as a sufficient

alternative to the dictate in the rule that a notice of motion is required, her letter-motion was still

filed more than fourteen days after the Court's March 16, 2021 entry of the oral ruling made on

the record. Plaintiff argues that because the Court did not give the docket text "an ECF Number

for reference," she could not serve a "Notice of Entry" and therefore the clock never started to run

on the fourteen-day deadline in the rule. (Doc. 63 at 3-4). Plaintiff's argument lacks merit. A

"Notice of Entry" as described by Plaintiff is not contemplated by the Federal Rules of Civil

Procedure or any other applicable rules in this Court.[2]  Rather, it is related to New York State Court proceedings and reflected in the New York Civil Practice Law and Rules. Accordingly, Plaintiff's motion for reconsideration is denied as untimely. *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018) ("As numerous cases from this Circuit have held, the untimeliness of a motion for reconsideration is reason enough to deny the motion.").

### CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss is DENIED.

Plaintiff's motion for reconsideration is DENIED.

The action is dismissed without prejudice as against the Estate of Kwang (Ed) Ng for failure to comply with Federal Rule of Civil Procedure 4(m).

Defendants are directed to file an Answer to the Second Amended Complaint by September 27, 2021. The Court will thereafter docket a Notice of Initial Conference.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 40 and 60; and to terminate the Estate of Kwang (Ed) Ng as a defendant herein.

**SO ORDERED:**

Dated:   White Plains, New York
         September 13, 2021

PHILIP M. HALPERN
United States District Judge

---

[2] The Court's determination of the motion was entered on the docket on March 16, 2021 and a Notice of Electronic Filing ("NEF") was electronically transmitted to all filing and receiving users in the case. (Mar. 16, 2021 Min. Entry). Under the Electronic Case Filing Rules and Instructions of this Court, electronic transmission of an NEF constitutes the notice required to be served by the Clerk under Federal Rule of Civil Procedure 77(d). *See* S.D.N.Y. ECF Rules & Instructions § 10.