# EXHIBIT 8

(b) Before entering into a patient-physician relationship, make clear any specific interventions or services the physician cannot in good conscience provide because they are contrary to the physician's deeply held personal beliefs, focusing on interventions or services a patient might otherwise reasonably expect the practice to offer.

(c) Take care that their actions do not discriminate against or unduly burden individual patients or populations of patients and do not adversely affect patient or public trust.

(d) Be mindful of the burden their actions may place on fellow professionals.

(e) Uphold standards of informed consent and inform the patient about all relevant options for treatment, including options to which the physician morally objects.

(f) In general, physicians should refer a patient to another physician or institution to provide treatment the physician declines to offer. When a deeply held, well-considered personal belief leads a physician also to decline to refer, the physician should offer impartial guidance to patients about how to inform themselves regarding access to desired services.

(g) Continue to provide other ongoing care for the patient or formally terminate the patient-physician relationship in keeping with ethics guidance.

*AMA Principles of Medical Ethics: I,II,IV,VI,VIII,IX*

---

***1.1.8 Physician Responsibilities for Safe Patient Discharge from Health Care Facilities***

Physicians' primary ethical obligation to promote the well-being of individual patients encompasses an obligation to collaborate in a discharge plan that is safe for the patient. As advocates for their patients, physicians should resist any discharge requests that are likely to compromise a patient's safety. The discharge plan should be developed without regard to socioeconomic status, immigration status, or other clinically irrelevant considerations. Physicians also have a long-standing obligation to be prudent stewards of the shared societal resources with which they are entrusted. That obligation may require physicians to balance advocating on behalf of an individual patient with recognizing the needs of other patients.

To facilitate a patient's safe discharge from an inpatient unit, physicians should:

(a) Determine that the patient is medically stable and ready for discharge from the treating facility; and

(b) Collaborate with those health care professionals and others who can facilitate a patient discharge to establish that a plan is in place for medically needed care that considers the patient's particular needs and preferences.

If a medically stable patient refuses discharge, physicians should support the patient's right to seek further review, including consultation with an ethics committee or other appropriate institutional resource.

*AMA Principles of Medical Ethics: I,II,VIII*

(iii) the burdens, risks, and expected benefits of all options, including forgoing treatment.

(c) Document the informed consent conversation and the patient's (or surrogate's) decision in the medical record in some manner. When the patient/surrogate has provided specific written consent, the consent form should be included in the record.

In emergencies, when a decision must be made urgently, the patient is not able to participate in decision making, and the patient's surrogate is not available, physicians may initiate treatment without prior informed consent. In such situations, the physician should inform the patient/surrogate at the earliest opportunity and obtain consent for ongoing treatment in keeping with these guidelines.

*AMA Principles of Medical Ethics: I,II,V,VIII*

---

***2.1.2 Decisions for Adult Patients Who Lack Capacity***

Respect for patient autonomy is central to professional ethics and physicians should involve patients in health care decisions commensurate with the patient's decision-making capacity. Even when a medical condition or disorder impairs a patient's decision-making capacity, the patient may still be able to participate in some aspects of decision making. Physicians should engage patients whose capacity is impaired in decisions involving their own care to the greatest extent possible, including when the patient has previously designated a surrogate to make decisions on his or her behalf.

When a patient lacks decision-making capacity, the physician has an ethical responsibility to:

(a) Identify an appropriate surrogate to make decisions on the patient's behalf:

(i) the person the patient designated as surrogate through a durable power of attorney for health care or other mechanism; or

(ii) a family member or other intimate associate, in keeping with applicable law and policy if the patient has not previously designated a surrogate.

(b) Recognize that the patient's surrogate is entitled to the same respect as the patient.

(c) Provide advice, guidance, and support to the surrogate.

(d) Assist the surrogate to make decisions in keeping with the standard of substituted judgment, basing decisions on:

(i) the patient's preferences (if any) as expressed in an advance directive or as documented in the medical record;

(ii) the patient's views about life and how it should be lived;

(iii) how the patient constructed his or her life story; and

(iv) the patient's attitudes toward sickness, suffering, and certain medical procedures.

(e) Assist the surrogate to make decisions in keeping with the best interest standard when the patient's preferences and values are not known and cannot reasonably be inferred, such as when the patient has not previously expressed preferences or has never had decision-making capacity. Best interest decisions should be based on:

(i) the pain and suffering associated with the intervention;

(ii) the degree of and potential for benefit;

(iii) impairments that may result from the intervention;

(iv) quality of life as experienced by the patient.

(f) Consult an ethics committee or other institutional resource when:

(i) no surrogate is available or there is ongoing disagreement about who is the appropriate surrogate;

(ii) ongoing disagreement about a treatment decision cannot be resolved; or

(iii) the physician judges that the surrogate's decision:

a. is clearly not what the patient would have decided when the patient's preferences are known or can be inferred;

b. could not reasonably be judged to be in the patient's best interest; or

c. primarily serves the interests of the surrogate or other third party rather than the patient.

*AMA Principles of Medical Ethics: I,III,VIII*

---

***2.1.3 Withholding Information from Patients***

Truthful and open communication between physician and patient is essential for trust in the relationship and for respect for autonomy. Withholding pertinent medical information from patients in the belief that disclosure is medically contraindicated creates a conflict between the physician's obligations to promote patient welfare and to respect patient autonomy.

Except in emergency situations in which a patient is incapable of making an informed decision, withholding information without the patient's knowledge or consent is ethically unacceptable. When information has been withheld in such circumstances, physicians' should convey that information once the emergency situation has been resolved, in keeping with relevant guidelines below.

The obligation to communicate truthfully about the patient's medical condition does not mean that the physician must communicate information to the patient immediately or all at once. Information may be conveyed over time in keeping with the patient's preferences and ability to comprehend the information. Physicians should always communicate sensitively and respectfully with patients.

With respect to disclosing or withholding information, physicians should:

(a) Encourage the patient to specify preferences regarding communication of medical information, preferably before the information becomes available.

(b) Honor a patient's request not to receive certain medical information or to convey the information to a designated surrogate, provided these requests appear to represent the patient's genuine wishes.