UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

               Plaintiff,

      -against-

KATHLEEN MARTUCCI, et al.,

              Defendants.

**OPINION AND ORDER**

20-CV-02331 (PMH)

PHILIP M. HALPERN, United States District Judge:

On August 25, 2023, after the parties' summary judgment motions were fully submitted and *sub judice* in this matter, Plaintiff filed a pre-motion letter in connection with her anticipated sanctions motions.[1] (Doc. 195). On September 12, 2023, the Court permitted Plaintiff to file the requested motions for sanctions but held the time for Defendants to oppose those motions in abeyance pending the Court's review and consideration of the cross-motions for summary judgment. (Doc. 202). On September 13, 2023, Plaintiff filed her first motion for sanctions. (Doc. 204; Doc. 206, "Pl. First Sanctions Br."). On October 27, 2023, Plaintiff filed her second motion for sanctions. (Doc. 207; Doc. 208, "Pl. Second Sanctions Br.").

On February 28, 2024, the Court entered an Opinion and Order that granted Defendants' motion for summary judgment, denied Plaintiff's motion for summary judgment, and dismissed this action ("Opinion and Order"). (Doc. 225).[2] The Court directed Plaintiff to advise whether, in light of its decision on the cross-motions for summary judgment, she still intended to press her

---

[1] The Court assumes the parties' familiarity with the underlying procedural history of this action. Unless otherwise indicated, defined terms and citations herein matter submitted in prior motion practice have the same meanings and utilize the same format ascribed to them in the February 28, 2024 Opinion and Order.

[2] This decision is also available on commercial databases. *See Doe v. Martucci*, No. 20-CV-02331, 2024 WL 839258 (S.D.N.Y. Feb. 28, 2024).

sanctions motions. (Doc. 226). Plaintiff advised that she did seek to press her motions and, accordingly, on March 7, 2024, the Court set the balance of the briefing schedule for the pending sanctions motions. (Doc. 229).

On March 27, 2024, Plaintiff filed a motion pursuant to Federal Rules of Civil Procedure 59(e) and 60 for reconsideration of the Opinion and Order.[3] (Doc. 230; Doc. 231, "Pl. Br."). Defendants thereafter opposed the sanctions and reconsideration motions (Doc. 234; Doc. 235;[4] Doc. 238), and Plaintiff filed reply (Doc. 236; Doc. 237; Doc. 242). Plaintiff then moved for this Court's recusal, which motion was denied on June 17, 2024. (Doc. 250). On July 15, 2024, Defendants filed sur-reply on Plaintiff's motion for reconsideration (Doc. 254), and Plaintiff filed her response thereto on July 22, 2024. (Doc. 258).

For the reasons set forth below, Plaintiff's motion for reconsideration is GRANTED in part and DENIED in part, and her motions for sanctions are DENIED.

## STANDARD OF REVIEW

I.    Federal Rules of Civil Procedure 59(e) and 60

"Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (citing *In re*

---

[3] The Court, in its Opinion and Order, also considered and ruled upon Plaintiff's fully briefed "Motion for Relief from an Order Preventing Plaintiff from Filing a Rule 11 Motion for Sanctions." (Doc. 176; Doc. 225). Although Plaintiff's instant motion seeks to alter, amend, and/or vacate the Opinion and Order, she notes her "understanding that the part of the Opinion and Order concerning the 'Plaintiff's Motion for Relief From April 19, 2023 Order' is moot, and hence requires no challenge in this motion." (Doc. 231 at 1). Accordingly, to the extent Plaintiff moves "to alter or amend" the Opinion and Order and/or for vacatur of same, she has made clear that she challenges only so much the Opinion and Order that granted summary judgment to Defendants and denied summary judgment to Plaintiff. (*See id.*; *see also* Doc. 230).

[4] Defendants filed a letter correcting a typographical error in their brief in opposition to Plaintiff's second motion for sanctions. (Doc. 239).

*Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [a reconsideration] motion is strict.").[5] "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *RST*, 597 F. Supp. 2d at 365 (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)). "It is settled law in this District that a motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Murray v. Dutcavich*, No. 17-CV-09121, 2020 WL 3318212, at *1 (S.D.N.Y. June 18, 2020) ("Reconsideration is not a procedural mechanism used to re-examine a court's decision. Nor should a reconsideration motion be used to refresh failed arguments, advance new arguments to supplant failed arguments, or relitigate issues already decided.").

"Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)). Motions for reconsideration "must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000). Limitations on motions for reconsideration ensure finality and "prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

(S.D.N.Y. 1988) (quoting *Lewis v. New York Tel.*, No. 83-CV-07129, 1986 WL 1441 (S.D.N.Y. Jan. 29, 1986)).

## II.    Federal Rule of Civil Procedure 11

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 6, 8 (2d Cir. 2019) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 11(b).

"When deciding whether to grant Rule 11 sanctions, the Court applies an objective standard of reasonableness, and looks to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was utterly lacking in support." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 526 (S.D.N.Y. 2017); *see also StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) ("[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement."); *Ferrand v. Mystique Brands LLC*, No. 20-CV-05933, 2021 WL 119572, at *13 (S.D.N.Y. Jan. 13, 2021) (noting that Rule 11's objective analysis is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments" (quoting *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999))).

Granting a motion for "Rule 11 sanctions . . . should be reserved for extreme cases, and all doubts should be resolved in favor of the signing attorney." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017). Furthermore, "[e]ven upon determining that Rule 11 has been violated, a court retains the discretion to decide whether to

impose sanctions." *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-00449, 2021 WL 919110, at *4 (E.D.N.Y. Mar. 8, 2021) (citing *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012)).

## ANALYSIS

### I.    Plaintiff's Motion for Reconsideration

Plaintiff makes the following six arguments on her motion for reconsideration: (1) Rule 1 of the Federal Rules of Civil Procedure requires that the Court issue an order addressing Plaintiff's summary judgment briefing on the issues of qualified immunity, substantive due process, and procedural due process; (2) the Court erred in finding that 42 U.S.C. § 405(h) deprived it of subject matter jurisdiction because Defendants are not officers or employees of the United States; (3) the Court erred in finding that § 405(h) deprived it of subject matter jurisdiction because this action is brought under 42 U.S.C. § 1983 and not 28 U.S.C. §§ 1331 or 1346; (4) the Court erred in finding that the ALJ actually decided issues pertinent to this action; (5) the Court erred by relying on disputed testimony in concluding that the commencement of the guardianship proceeding was not malicious government action; and (6) the Court erred by overlooking applicable law that warrants a finding that the breach of Plaintiff's privacy interest objectively shocks the conscience.

The first four arguments presented by Plaintiff amount to a challenge to the Court's determination that it lacked subject matter jurisdiction over her First through Fifth Claims for Relief and therefore did not analyze the merits of those claims. The balance of her arguments concern the Court's dismissal of the Sixth Claim for Relief on the merits.

### A.    First Through Fifth Claims for Relief: Lack of Subject-Matter Jurisdiction

Plaintiff first argues that the Court erred in dismissing the First through Fifth Claims for Relief because it did not address her merits arguments as to those claims—including her arguments

concerning Defendants' defense of qualified immunity. Plaintiff's argument continues that Federal Rule of Civil Procedure 1 ("Rule 1") mandates that the Court address all of Plaintiff's summary judgment arguments in order to achieve "a just and efficacious resolution of this action." (Pl. Br. at 10). Defendants counter that nothing in the plain language of Rule 1 requires the Court to address all of Plaintiff's summary judgment arguments and Plaintiff has not cited any authority requiring the Court grant reconsideration based upon Rule 1. The Court agrees with Defendants.

As explained in detail in the Opinion and Order, the First through Fifth Claims for relief were dismissed for lack of subject matter jurisdiction and therefore, the Court had no jurisdiction to review or decide the merits of those claims. *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)[.]"); *Vera v. Republic of Cuba*, 867 F.3d 310, 315-16 (2d Cir. 2017) ("[S]ubject matter jurisdiction functions as a restriction on federal power . . . . Federal courts may not proceed at all in any cause without it."); *Atanasio v. O'Neill*, 235 F. Supp. 3d 422, 424 (E.D.N.Y. 2017) ("A federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation; it is nothing less than an unconstitutional usurpation of state judicial power."). Rule 1 does not alter or modify the constitutional imperative. The rule provides: "[The Federal Rules of Civil Procedure] govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Plaintiff, in reply, argues that it is manifestly unjust to require her to appeal this Court's Opinion and Order to the Second Circuit because of her age and the expense involved, but that

argument too overlooks the law forbidding this Court from reaching the merits of her claims when it has determined it lacks jurisdiction over them. In any event, Plaintiff cites no case law that supports the notion that reconsideration is warranted simply because she is of advanced age and the appellate process is expensive. Likewise, there was no purpose in considering Plaintiff's arguments concerning qualified immunity.

With respect to Plaintiff's argument that the Court erred in finding that § 405(h) deprived it of subject matter jurisdiction because Defendants are not officers or employees of the United States, she acknowledges in her brief the exception upon which the Court discussed at length in the Opinion and Order. (Pl. Br. at 10). As Plaintiff stated in her moving brief, "[t]he sole exception to the Second Circuit's ruling [that § 405(h) does not apply to a suit against state officials] is that 'the scope of § 405(h) extends to suits in which claims against state officials are merely disguised disputes with the Secretary of the sort described in §§ 405(g) and (h).'" (*Id.* (citing *Ellis v. Blum*, 643 F.2d 68, 76 (2d Cir. 1981))). The Court, in the Opinion and Order, reviewed the applicable law and the facts in the record and concluded, as relevant to this issue, that Plaintiff's claims were challenges to the termination of her Medicare benefits and therefore subject to § 405(h). (Doc. 225 at 9-11).

Plaintiff has not presented any controlling decisions or data that the Court overlooked in reaching this conclusion. Rather, Plaintiff quibbles with the Court's characterization of the First through Fifth Claims for Relief alleged in the Second Amended Complaint, contending that "it was not a reasonable inference" to conclude that "the thrust of the claims are claims for benefit payments to cover the cost of her stay at HHH when her coverage ceased and for further Medicare benefits in the form of further intensive therapy." (Pl. Br. at 11 (citing Doc. 225 at 10)). She bases this conclusion on her assertion that because she received further intensive therapy at another

facility, "[c]learly, Plaintiff has no intention of seeking to compel HHH to bill Medicare for care provided by another facility." (*Id.*). This purportedly "clear" assertion misses the mark: that Plaintiff received elsewhere the therapy she sought from Defendants does not bear on whether these claims against Defendants arise under the Medicare Act; and is not a fact that the Court overlooked in the Opinion and Order that would change the result reached therein. The Court also determined that none of the First through Fifth Claims for Relief are violations of the Fourteenth Amendment because Plaintiff then and now cites to no controlling authority authorizing such claims. Plaintiff disagrees with the result the Court reached but has not met the strict burden required to warrant reconsideration on this ground.

Plaintiff also argues that the Court erred in finding that § 405(h) deprived it of subject matter jurisdiction because this action is brought under 42 U.S.C. § 1983 and not 28 U.S.C. §§ 1331 or 1346. (Pl. Br. at 12-14). Here too, Plaintiff incorrectly assumes that her claims are constitutional in nature. As explained in the Opinion and Order, "[t]he Medicare Act eliminates federal question jurisdiction over lawsuits brought 'to recover on any claim arising under' Medicare." (Doc. 225 at 8-9 (citing 42 U.S.C. § 405(h) ("No action against the United States . . . or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."))). The Court concluded that the First through Fifth Claims for Relief arise under the Medicare Act. Plaintiff contends that because the prohibition in § 405(h) covers cases brought under § 1331 but does not specify that it includes claims brought under § 1983, claims brought under § 1983 must not be subject to § 405's exhaustion requirement. (Pl. Br. at 13). The Court notes that Plaintiff pled in the Second Amended Complaint that "[t]his Court has jurisdiction over the subject matter, pursuant to 28 U.S.C. § 1331 . . . ." (Doc. 39 ¶ 8). Pressing any argument now on reconsideration that this action was not brought under § 1331 defies

credulity. In any event, the argument is simply wrong. Again, Plaintiff conflates the Court's determination that these claims arise under the Medicare Act with her theory that these claims arise under the Fourteenth Amendment and may be pressed pursuant to § 1983. The fallacy is that these five claims are not constitutional law claims despite Plaintiff's improper reclassification of these claims as § 1983 claims. Simply put, § 405(h) applies to Plaintiff's § 1331 case and she was required to exhaust her remedies under the Medicare Act.

Plaintiff's final challenge to the application of § 405's exhaustion requirement to her First through Fifth Claims for Relief concerns the Court's findings with respect to the ALJ's decision. The Court explained, in the Opinion and Order, that Plaintiff had raised at the ALJ Hearing her claims of entitlement to IRF therapy, phenobarbital and critical illness myopathy, and discharge planning which are the same claims raised in the First through Fifth Claims for Relief. (Doc. 225 at 9-11). Plaintiff argues that "the ALJ did not actually decide those issues." (Pl. Br. at 18). Whether the ALJ actually decided those issues or not misses the point—the allegations before the ALJ are included in Plaintiff's First through Fifth Claims for Relief.

Plaintiff does not point to data that the Court overlooked, instead taking issue with the Court's findings and rehashing the arguments she made at summary judgment. A motion for reconsideration is not "an occasion for repeating old arguments previously rejected." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Plaintiff attempts to distinguish the issues raised before the ALJ by describing them in terms of liberty and property rights, but as the Court noted in the Opinion and Order, "Plaintiff's attempts to couch these claims as § 1983 claims based upon liberty and property interests protected by the Fourteenth Amendment falls flat." (Doc. 225 at 15, n.8). Plaintiff's disagreement with the Court's decision is insufficient to warrant reconsideration. *Vista Food Exch., Inc. v. Lawson Foods, LLC*, No. 17-CV-07454, 2020

WL 7364489, at *2 (S.D.N.Y. 2020) ("[G]eneral dissatisfaction with the Court's conclusion or the length of the Court's discussion does not constitute . . . a clear error or prevent manifest injustice meriting reconsideration.").

Although the Court denies reconsideration on the grounds urged by Plaintiff in her moving brief, it did, however, err in dismissing the First through Fifth Claims for Relief with prejudice. Because those claims were dismissed based upon the failure to exhaust administrative remedies, the dismissal should have been without prejudice. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]hen a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.'" (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999))). Accordingly, the Judgment must be amended to provide that the dismissal of those claims is without prejudice.

B.  Right Through Fifth Claims for Relief: The MAC Decision

On June 27, 2024, the MAC issued a decision on Plaintiff's final level of administrative review (the "MAC Decision."). (Doc. 255). As the Court explained in the Opinion and Order, it is not until after final decision is rendered that a claimant may seek judicial review in federal district court of that final decision. *Heckler v. Ringer*, 466 U.S. 602, 607 (1984). It is well-settled "that a final decision is a *prerequisite* for subject matter jurisdiction in the District Court." *Travis*, 2024 WL 496776, at *7 (emphasis added). Thus, even though the MAC Decision was rendered while Plaintiff's motion for reconsideration of the Opinion and Order was *sub judice*, the MAC had made no final decision in Plaintiff's case at the time this action was commenced or at the time Plaintiff filed the operative Second Amended Complaint.

While the filing of an amended or supplemental complaint may cure a failure to exhaust under § 405(h), that doctrine is not applicable here, where the defect was not remedied until after

judgment was entered dismissing this case. *Cf. Mathews v. Diaz*, 426 U.S. 67, 75 (1976) (supplemental complaint cured a failure to exhaust under 42 U.S.C. § 405(g)); *Black v. Sec'y of Health & Hum. Servs.*, 93 F.3d 781, 790 (Fed. Cir. 1996) ("[D]efects in a plaintiff's case—even jurisdictional defects—can be cured while the case is pending if the plaintiff *obtains leave to file a supplemental pleading under Rule 15(d) reciting post-filing events that have remedied the defect*." (emphasis added)). Here, however, because the First through Fifth Claims for Relief arose under the Medicare Act and were not exhausted prior to obtaining a final appealable decision, the Court lacked subject matter jurisdiction over the claims and such jurisdictional defect was not cured until after Judgment was entered. *See Iwachiw v. Massanari*, 125 F. App'x 330, 331-32 (2d Cir. 2005); *Loftus v. Fin. Indus. Regul. Auth., Inc.*, No. 20-CV-07290, 2022 WL 2829476, at *2 (S.D.N.Y. July 20, 2022) (holding on motion for reconsideration that final agency decision issued after judgment had been entered was insufficient to alter judgment for defendants based on plaintiff's failure to exhaust FINRA administrative remedies). The MAC Decision is therefore not a basis to grant reconsideration or alter the Judgment.

Even if the Court were to assume, however, that the MAC Decision sufficiently cured the jurisdictional defect on the First through Fifth Claims for Relief, the same result would be reached, based upon the other grounds that were briefed by the parties in their underlying cross-motions for summary judgment. These claims do not implicate any recognized constitutionally protected substantive or procedural due process rights. As noted in the Opinion and Order, "[e]ven if Plaintiff had exhausted her administrative remedies, Plaintiff's attempt to couch these claims as § 1983 claims based upon liberty and property interests protected by the Fourteenth Amendment falls flat, as Plaintiff has cited no authority to actually support her theories other than cases involving unrelated fact patterns." (Doc. 225 at 15, n.8).

Plaintiff's First through Fifth Claims for Relief purport to allege violations of her Fourteenth Amendment substantive and procedural due process rights. The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "Substantive due process protects those rights that are so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Irwin v. City of New York*, 902 F. Supp. 442, 449 (S.D.N.Y. 1995). "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019). "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that [s]he possessed a liberty interest and (2) that the defendant(s) deprived [her] of that interest as a result of insufficient process." *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *6 (S.D.N.Y. Nov. 19, 2021) (quoting *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020).

Plaintiff, in her First through Fifth Claims for Relief, alleges various liberty- and property-interest claims—arguing that that each claim states substantive and procedural due process violations. Plaintiff did not meet her burden to establish that she was entitled to judgment as a matter of law granting those claims for relief because she did not establish that any of those claims actually implicate recognized and constitutionally protected Fourteenth Amendment rights as far as substantive due process violations; or that she was deprived of notice or an opportunity to be heard with respect to procedural due process violations. Defendants, on the other hand, demonstrated that Plaintiff's claimed rights to medical care and variations thereon do not rise to

the level of a substantive due process right; that her claims of entitlement to discharge planning, medical information, and further IRF level rehabilitation therapy were created by the Medicare Act or its attendant regulations; and that Plaintiff received both notice and the opportunity to be heard by availing herself of the Medicare appeals process.

1. Liberty-Interest Claims

As an initial matter, Plaintiff failed to meet her burden to establish that any of her alleged liberty interests (i.e., the First, Second, and Fourth Claims for Relief) are "deeply rooted in our history and tradition" to create a constitutionally protected right by operation of substantive due process. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237-38 (2022) (describing a plaintiff's burden for substantive due process claims). Indeed, Plaintiff fails to provide the Court with any historical evidence for these purported fundamental unenumerated constitutional rights, instead mostly relying on various recent case law. *Cf. Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) (explaining that a plaintiff must proffer at least some historical support for an asserted fundamental right).

With respect to the First Claim for Relief, Plaintiff relied on *Charles* to support her contention that the interest in "a serious medical need for discharge planning" as alleged is a constitutionally protected right. 925 F.3d at 86. (Doc. 189 at 12-14). The Second Circuit in *Charles* was concerned with the adequacy of medical care those plaintiffs received while in civil detention, analyzing immigration detainees' right to be free from deliberate indifference to serious medical needs. The Second Circuit explained that a "special relationship" existed when a person is involuntarily held in state custody, imposing a duty on the state "to provide for his or her 'safety and general well-being.'" *Charles*, 925 F.3d at 82. Additionally, although Plaintiff attempted to press her point by distinguishing the Eighth and Fourteenth Amendments, she provided no basis

in case law that extends this "special relationship" deliberate indifference application to patients at a hospital who are not provided with what Plaintiff has unilaterally deemed an "appropriate discharge plan." (Doc. 189 at 13). Not only was Plaintiff not detained, but her claim was that HHH wanted to discharge her too soon, not that HHH would not let her leave. (Doc. 185 at 4).

Plaintiff described the Second Claim for Relief as stating a claim for "liberty interest in medical information," relying on *Pabon v. Wright* which stands for the proposition that prisoners have a "right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment." 459 F.3d 241, 246 (2d Cir. 2006). (Doc. 189 at 14-17). Again, Plaintiff's support for her claim rests on cases arising from the prison setting. Specifically, the Circuit held in *Pabon* that, "in order to permit *prisoners* to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment." 459 F.3d at 249-50 (emphasis added). Plaintiff has not cited any case extending this principle to persons not otherwise confined by the State.

Plaintiff argued that the Fourth Claim for Relief concerns her liberty interest in medical care, specifically stating and referencing law concerning conditions of confinement in involuntary custody. (Doc. 189 at 19-20). She continues to argue, on reconsideration, that "in custodial circumstances, the interest in 'medical care [are among] the essentials of the care that the State must provide.'" (Doc. 258 at 1 (quoting Y*oungberg v. Romeo*, 457 U.S. 307, 324 (1982))). As the Court previously held, jurisprudence concerning liberty interests with respect to a right to medical care in the involuntarily detention setting does not provide any solid foundation for Plaintiff's proposition. Her assertion that Defendants' non-compliance with discharge planning rules

transformed her stay into an involuntary one lacks support and analysis. Plaintiff has not satisfied her burden that she has a constitutionally protected liberty interest.

    2.  <u>Property-Interest Claims</u>

Plaintiff described the Third Claim for Relief as a violation of her property interest in discharge memorialization, relying on statutes, implementing regulations, and Department of Health guidelines. (Doc. 189 at 17-19). She described the Fifth Claim for Relief as a violation of her property interest in intensive rehabilitation therapy. (*Id*. at 20-21).

Again, Plaintiff fails offer any historical evidence to meet her burden that these "interests" are constitutionally protected by operation of substantive due process. *See Dobbs*, 597 U.S. at 237-38. Moreover, even if Plaintiff is entitled to discharge planning, medical information, and further IRF level rehabilitation therapy, such "rights" were created under state law and not by the Constitution, and without more cannot give rise to a substantive due process claim. "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution . . . substantive due process rights are created only by the Constitution." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring); *Local 342 v. Town Bd.*, 31 F.3d 1191, 1196 (2d Cir. 1994); *see also Ryan v. Cleland*, 531 F. Supp. 724, 731 (E.D.N.Y. 1982) ("[T]o the extent that the government has conferred any 'rights' upon veterans to government medical care [via statute], congress has also insulated the administrative decision-making process for adjudicating those rights from judicial review.").

With respect to procedural due process, were the Court to find that Plaintiff sufficiently established the existence of a property interest in discharge planning, medical information, and further IRF level therapy, Plaintiff still would have had to have established to overcome summary judgment that she was deprived of notice or an opportunity to be heard. *Mathews v. Eldridge*, 424

U.S. 319, 333-335 (1976). It was undisputed that Plaintiff had availed herself of the first two levels of Medicare administrative appeals before any reduction in therapy and had an opportunity to be heard. (Doc. 225 at 12 (citing 56.1 ¶¶ 35, 38-42)).

Ultimately, Plaintiff's First through Fifth Claims for Relief fail on the merits because, among other things, Plaintiff's theory seeks to extend substantive and procedural due process rights to circumstances in which historically they do not so exist. Plaintiff's novel theory is unsupported by case law, cherry-picks from decisions, and conflates substantive and procedural due process. Plaintiff's analysis does not permit the Court to conclude that Defendants' conduct sinks to the level of a constitutional violation. Thus, even if Plaintiff had exhausted administrative remedies, the Court concludes that Plaintiff has failed to establish valid constitutional claims.

C.   Sixth Claim for Relief

With respect to the Sixth Claim for Relief, Plaintiff contends that the Court erred by relying on disputed testimony in concluding that the commencement of the guardianship proceeding was not malicious government action; and by overlooking applicable law that warrants a finding that the breach of Plaintiff's privacy interest objectively shocks the conscience. To the extent Plaintiff rehashes the same arguments that she made at summary judgment, again, that approach is insufficient to warrant reconsideration.

Plaintiff's argument that the Court relied on disputed facts concerning the commencement of the guardianship proceeding is predicated in part on her assertion that the Son's testimony, construed in her favor, establishes that Defendants' pursuit of a guardianship was "totally arbitrary or outright malicious." (Pl. Br. at 21). As an initial matter, reconsideration is not "an opportunity for making new arguments that could have been previously advanced." *Associated Press*, 395 F. Supp. 2d at 19. As this argument was not raised at summary judgment, it is not appropriate on this

motion. Even were the Court to consider this argument, it fails to generate a triable issue of fact as to the propriety of the commencement of the guardianship proceeding. The Son's testimony that Plaintiff now cites is his speculation that Defendants initiated the guardianship proceeding to protect themselves from legal liability. (Pl. Br. at 19-20). She attempts to corroborate that testimony with citation to a Medicare survey from 2018 concerning another resident in one of HHH's inpatient units (*id.*), but without any tie to Plaintiff or the unit in which she stayed. Further, that survey does not establish any arbitrary or malicious motive on Defendants' part with respect to the other residents or Plaintiff. The cited material, in the face of Defendants' testimony, the guardianship petition itself, and Defendants' expert opinions, is insufficient to defeat a summary judgment motion or to warrant reconsideration on the basis of purportedly overlooked facts – some of which are presented for the first time on this motion. While Plaintiff is correct that the Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004), this rule does not include circumstances, such as those presented here, where the non-movant relies on "mere speculation or conjecture as to the true nature of the facts," *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020).

Plaintiff further argues that the Court overlooked applicable law that warrants a finding that the breach of Plaintiff's privacy interest objectively shocks the conscience. (Pl. Br. at 21-25). She argues that the Court has ignored Second Circuit precedent, by relying on the Second Circuit case *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 64 (2d Cir. 2011), and not citing to *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018). Plaintiff's position is that had the Court relied on *Hancock*, it would have found that the disclosure of medical records to initiate a guardianship proceeding constitutes a *prima facie* violation of one's privacy rights as

a matter of law, without any regard for the government's interest in disclosing the medical records. For the record, *Hancock* did not overrule *Matson*: it explained the significance of *Matson* and clarified the still applicable "shocks-the-conscience" analysis that it had articulated in *Matson* when the Circuit was first confronted with a weak privacy interest. *Hancock*, 882 F.3d at 68 ("*Matson* gave us the chance to clarify that when the strength of a privacy interest is sufficiently weak it can be overwhelmed by even a moderately strong government interest in disclosure."). Importantly, Plaintiff's argument misconstrues *Hancock*, as well as the Court's holding in the Opinion and Order. The Court considered Defendants' interest in "effect[ing] a safe discharge because the Proxies refused discharge despite two Livanta findings in favor of discharge and Defendants' concern that Plaintiff could acquire antibiotic resistant bacteria by unnecessarily prolonging her stay at HHH," balanced against Plaintiff's weak privacy interest. (Doc. 225 at 16-17). Contrary to Plaintiff's reading of the case, *Hancock* does not require a finding that Defendants' initiation of the guardianship proceeding objectively shocks the conscience or that the disclosure of medical records to initiate a guardianship proceeding constitutes a *prima facie* violation of one's privacy rights as a matter of law. Rather, and consistent with the Court's analysis in the Opinion and Order, the Circuit in *Hancock* explained, "[a]lthough it is fundamental, the constitutional right to privacy is not absolute . . . . A constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in breaching it." 882 F.3d at 65.

Separately, and in addition, Plaintiff argues that the Court purportedly did not reach the merits of the Sixth Claim for Relief because it did not pass on Defendants' defense of qualified immunity. (Pl. Br. at 6-7). Before addressing the qualified immunity question, the Court must first address the question of whether a constitutional violation has been alleged at all. *See id*. at 69 ("Because the district court found that Appellants did not have claims under the Fourteenth

Amendment, it did not have to pass on whether the individual Appellees were entitled to qualified immunity from those claims."); *see also Soundview Assocs. v. Town of Riverhead*, 893 F. Supp. 2d 416, 437 (E.D.N.Y. 2012) ("Because the Court grants summary judgment on plaintiff's substantive and procedural due process claims, the Court need not reach the issue of qualified immunity with respect to those claims."). The Court thoroughly evaluated the merits of the Sixth Claim for Relief, granted summary judgment to Defendants on Plaintiff's Fourteenth Amendment claims, and therefore did not need to reach the issue of qualified immunity.

D.  <u>State Law Claims</u>

Plaintiff's sole argument on reconsideration concerning the State Law claims is that because the "Court's dismissal of Counts I-VI were clear errors of manifest injustice, the independent basis for federal jurisdiction in this action for the state law claims in Counts VII-XII remains intact, pursuant to 28 U.S.C. § 1367(a). Therefore, this Court's dismissal of Plaintiff's State law claims must be reversed." (Pl. Br. at 25). Because the Court denies Plaintiff's motion for reconsideration as to the First through Sixth Claims for Relief, its holding with respect to the State Law claims remains intact and reconsideration is likewise denied as to those claims.

Accordingly, Plaintiff's motion for reconsideration is granted only to the extent that the Judgment shall be modified so as to reflect the Court's determination herein that the First through Fifth Claims for Relief alleged in Plaintiff's Second Amended Complaint are dismissed without prejudice, and is otherwise denied.

II.  <u>Plaintiff's Motions for Sanctions</u>

Plaintiff's first sanctions motion is addressed to Defendants' pre-motion letter that was submitted in advance of their motion for summary judgment. Her second sanctions motion appears to be addressed to Defendants' answer and summary judgment briefing, although that is not exactly

clear. "Rule 11 governs the minimum standards applicable to a 'pleading, written motion, or other paper' submitted to a court, but is distinct from the other rules which provide for the presentation of a party's legal positions." *On Time Aviation, Inc. v. Bombardier Cap. Inc.*, 570 F. Supp. 2d 328, 331 (D. Conn. 2008), *aff'd*, 354 F. App'x 448 (2d Cir. 2009). To grant a motion for sanctions, the Court must conclude that it is "patently clear that [Defendants'] claim has absolutely no chance of success." *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995). It is not, however, a vehicle to be used to test "the legal sufficiency of a claim or defense that more appropriately can be disposed of by . . . a motion for summary judgment . . . ." 5A Fed. Prac. & Proc. Civ. § 1335 (4th ed.).

A.   Plaintiff's First Sanctions Motion

Plaintiff takes issue with each fact and argument set forth in Defendants' pre-motion letter filed in anticipation of their motion for summary judgment, contending that they presented "a frivolous basis for leave to move for summary judgment in violation of Fed. R. Civ. P. Rule 11(b)." (Pl. First Sanctions Br. at 1). She argues that the facts set forth in the pre-motion letter impermissibly drew inferences in favor of Defendants. And she argues that none of the case law cited by Defendants is applicable to the facts and circumstances of this case—specifically, contending that Defendants took frivolous positions with respect to their arguments of lack of subject matter jurisdiction, collateral estoppel, substantive due process, procedural due process, and qualified immunity.

Plaintiff raises nearly identical contentions in support of her summary judgment motion and opposition to Defendants' motion as she presses on this motion for sanctions. "To submit full briefing in opposition to a summary judgment motion and then submit the same grounds as supporting a separate Rule 11 motion is patently unreasonable . . . . [and] a firmly held conviction

of the correctness of one's position does not authorize collateral attack on an opponent's legal arguments by resort to Rule 11." *On Time Aviation, Inc.*, 570 F. Supp. 2d at 332.

Plaintiff takes issue with the following factual contentions in the pre-motion letter: (1) "Plaintiff was ready for discharge to a SNF [skilled nursing facility] for subacute therapy"; (2) "through three levels of the Medicare appeal process, [Plaintiff's Proxies] argu[ed] that Plaintiff needed more acute rehabilitation due to the effects of phenobarbital and critical illness myopathy"; (3) that a "fourth-level appeal was available, but Plaintiff has not pursued it"; and (4) "Plaintiff was not injured as a result of the treatment she received from HHH after February 2020." (Pl. First Sanctions Br. at 3-5 (citing Doc. 155 at 1-2)). These statements do not violate Rule 11; are not "utterly lacking in support," *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003); and each find a basis in evidence as demonstrated by the Rule 56.1 Statement and evidence submitted on the motions for summary judgment.

As to the first statement, the ALJ Decision states that as of February 15, 2020, Plaintiff "was medically stable and that transfer to a [SNF] was appropriate for her continued care at a subacute care facility." (56.1 ¶ 42). With respect to the second statement, the ALJ Hearing Transcript shows that Plaintiff's Son addressed these issues at length before the ALJ (Doc. 184-29), whereas Plaintiff's argument on this motion baselessly alleges there is no evidence that the "Medicare appeals process permitted a factual determination related to critical illness myopathy or the adverse effects of drugs" (Pl. First Sanctions Br. at 5). With respect to the third statement, Defendants relied on their personal knowledge and were not independently aware at the time of the pre-motion letter that an appeal to the MAC had actually been filed—understandably so, given the representation in the appeal document that Plaintiff sent copies of the appeal to Livanta and Plaintiff's counsel only (Doc. 222-1 at 3); and Plaintiff does not claim she otherwise notified

Defendants of the appeal. The fourth statement, that Plaintiff was not injured as a result of the treatment she received from HHH after February 2020, was supported by Dr. Greenwald's expert report and the testimony of Dr. Seliger. (56.1 ¶¶ 66, 68). Plaintiff's assertion that these statements in the pre-motion letter are frivolous is belied by the facts supporting them.

Moreover, sanctions motions that fail to show that the purportedly frivolous arguments are foreclosed by binding precedent, and instead "merely recast the[ir] opposition arguments into a Rule 11–esque form," are manifestly improper. *On Time Aviation, Inc.*, 570 F. Supp. 2d at 332. The Court need not and will not repeat why Defendants' legal arguments were not frivolous. The Opinion and Order thoroughly addressed and approved Defendants' position with respect to their arguments of Medicare exhaustion and lack of subject matter jurisdiction, and again, in the instant decision, the Court reaffirmed its prior holding with respect thereto. Plaintiff's persistence on these issues is itself sanctionable, as "courts within the Second Circuit have imposed sanctions where a party persists in raising previously rejected claims or defenses." *Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*, No. 18-CV-02092, 2022 WL 1546673, at *2 (S.D.N.Y. Apr. 5, 2022) (collecting cases).

The Court's more in-depth analysis herein concerning the issues of substantive and procedural due process likewise demonstrate that Defendants' position in their pre-motion letter and at summary judgment was not frivolous. Simply put, it would be a waste of judicial resources for the Court to now entertain exactly that which it sought to avoid by holding Plaintiff's multiple sanctions motions in abeyance pending its consideration of the cross-motions for summary judgment: Plaintiff's insistence on adjudicating the issues raised in the summary judgment motions *ad nauseum*. Plaintiff's first motion for sanctions is denied.

B.  Plaintiff's Second Motion for Sanctions

Plaintiff's second sanctions motion is directed specifically at the propriety of Defendants' qualified immunity defense. The "pleading, written motion, or other paper" that Plaintiff challenges on this motion appears to be Defendants' answer and/or their motion for summary judgment. This second sanctions motion, like the first, merely recasts Plaintiff's summary judgment arguments as sanctions arguments which, as previously stated, "is patently unreasonable" and improper. *On Time Aviation, Inc*., 570 F. Supp. 2d at 332.

The Court has twice rejected Plaintiff's argument that the Second Circuit in *Hancock* clearly established as a matter of law her right to privacy in the limited medical information disclosed in the guardianship petition (Pl. Second Sanctions Br. at 6-10), which forms the basis for her argument that the qualified immunity defense is frivolous. (*See, e.g.*, Doc. 225 at 17 (concluding that "Plaintiff's medical condition does not enjoy a constitutionally-protected right to privacy," and that "the disclosure of limited medical information in the guardianship petition here was not conscious-shocking")). Likewise, the Court twice accepted Defendants' argument that Defendants' disclosure in the sealed court filing of Plaintiff's limited medical information was not conscious-shocking. (*See id.*; *see also supra* ("Contrary to Plaintiff's reading of the case, *Hancock* does not require a finding that Defendants' initiation of the guardianship proceeding objectively shocks the conscience or that the disclosure of medical records to initiate a guardianship proceeding constitutes a *prima facie* violation of one's privacy rights as a matter of law.")). The Court's prior analyses and conclusions in this regard make clear that Defendants' arguments were and are not frivolous.

Plaintiff also appears to move for sanctions on the basis that Defendants' summary judgment argument that her claims under New York State law were untimely pursuant to Court of

Claims Act §§ 10(3), (3–b), was frivolous; and that Defendant Martucci's Eleventh Affirmative Defense concerning bad faith, malice, or gross misjudgment, was frivolous. (Doc. 207). Plaintiff did not, however, brief these two issues in the memorandum of law in support of her second sanctions motion. (*See generally* Pl. Second Sanctions Br.). The Court, therefore, deems these arguments waived, as "it is not this Court's responsibility to raise and make counsel's arguments for them." *Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *11 n.7 (S.D.N.Y. Feb. 17, 2021); *United States v. Washington*, No. 13-CR-00107, 2014 WL 793320, at *5 n.11 (W.D.N.Y. Feb. 26, 2014) (considering argument not briefed in supporting memorandum of law to be waived).

Essentially, Plaintiff attempts to persuade the Court that sanctions are appropriate because Defendants advanced a view of the case that was inconsistent with Plaintiff's theories. This is simply not sanctionable conduct. Accordingly, Plaintiff's second sanctions motions is denied.

III.   Defendants' Request for Attorney's Fees

Defendants, in their opposition to each of Plaintiff's sanctions motions, request that the Court award them their reasonable attorney's fees and costs for opposing the motions pursuant to Rule 11(c)(2). Plaintiff opposes in her reply briefs, arguing that even if her arguments were "extremely weak," Defendants did not establish they were "destined to fail"; that she brought these sanctions motions because she believes that "Defendants sought to misuse summary judgment motion practice to present positions rooted in *disputed* interpretations of the facts as well as in defective or outright false legal representations"; that Plaintiff's actions could not increase the cost of litigation because "New York State taxpayers are paying for Defendants' legal firm"; and Defendants could have avoided these motions by withdrawing their position (which, although unclear, appears to be an assertion that Defendants should have withdrawn their pre-motion letter seeking leave to move for summary judgment). (Doc. 236 at 8-10). Plaintiff also argues that

Defendants are not entitled to fees for all of the same reasons she contends she is entitled to sanctions against them. (*See* Doc. 237 at 7-10). The thrust of Plaintiffs' opposition is that her sanctions motions were not made for an improper purpose and therefore fees should not be awarded to Defendants as the prevailing party.

Plaintiff quite clearly has multiplied the proceedings and increased the cost of litigation by filing two sanctions motions, which, as discussed above, are both duplicative of her summary judgment motion and her motion for reconsideration. The briefing on these motions demonstrates, as the Court expected and cautioned Plaintiff against, that the parties simply had differing views of the underlying facts at the core of this litigation as well as the significance and interpretation of the applicable law, neither of which is a basis for sanctions.

Rule 11 permits an award of sanctions where a party persists in raising previously rejected arguments. *Eisenberg*, 2022 WL 1546673, at *2. However, "Rule 11 does not, after all, authorize sanctions for merely frustrating conduct." *Bishop v. Cnty. of Suffolk*, No. 13-CV-00446, 2019 WL 13422759, at *8 (E.D.N.Y. Aug. 31, 2019) (quoting *Lawrence v. Richman Group of CT LLC*, 620 F. 3d 153, 158 (2d Cir. 2010)). This case is closed. The Court has granted summary judgment to Defendants, denied Plaintiff's motion for reconsideration, and resolved the pending motions for sanctions. There is simply nothing further on this docket that Plaintiff can file[6] and for that reason, the Court exercises its discretion to decline to award fees incurred for the motions.[7]

---

[6] Plaintiff requested in her notice of motion for reconsideration that the Court "[a]cknowledge that, pursuant to Federal Rules of Appellate Procedure, Rule 4(a)(4), the time for all parties to file a notice of appeal must run from the entry of the order disposing of this motion brought under Rule 59(e) and Rule 60." (Doc. 230). The Court does not give procedural advice.

[7] Plaintiff is cautioned, however, that the presentation of these arguments again in this or any other case may be sanctionable. *Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 7, 9 (2d Cir. 2019) ("[G]iven that the district court had already rejected a nearly identical argument in [an earlier suit], it was not reasonable for [plaintiff] to believe that his position would be warranted in this case.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration (Doc. 230) is GRANTED in part and DENIED in part, and her motions for sanctions (Doc. 204, Doc. 207) are DENIED. Defendants' request for attorneys' fees for opposition to the sanctions motions is DENIED.

The Clerk of Court is respectfully requested to: (1) modify the Judgment entered on February 28, 2024 (Doc. 227) so as to reflect the Court's determination herein that the First through Fifth Claims for Relief alleged in Plaintiff's Second Amended Complaint are dismissed without prejudice; and (2) terminate the pending motion (Doc. 230).

SO ORDERED.

Dated: White Plains, New York
        December 16, 2024

_____
Philip M. Halpern
United States District Judge